[Cite as *In re B.Z.*, 2017-Ohio-5638.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| B.Z., DELINQUENT CHILD | | |
| | : | |
| | | **CASE NO. 2016-G-0089** |
| | : | |

Appeal from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 2016 JD 00019.

Judgment: Affirmed.

*James R. Flaiz,* Geauga County Prosecutor, and *Melissa J. Lee,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Appellee, State of Ohio).

*Gregory J. Wysin,* 2037 Brady Lake Road, Kent, OH 44240 (For Appellant, B.Z.).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, B.Z., appeals from the judgment of the Geauga County Court of Common Pleas, Juvenile Division, adopting the magistrate's decision, which adjudicated appellant delinquent on one count of domestic violence, one count of disorderly conduct, and one count of illegal possession of marijuana drug paraphernalia. At issue is whether the juvenile court erred in entering the adjudication in light of evidence appellant submitted to support an affirmative defense of self-defense. For the reasons discussed in this opinion, we affirm the trial court's judgment.

{¶2} On the afternoon of January 12, 2016, Jason Zellman sent his 15-year-old son, appellant, a series of text messages inquiring into what he believed to be marijuana paraphernalia that was found in their home. Appellant sent response messages, asserting the items were old and they were nothing to worry about. When appellant and his sister, A.Z., returned home from school, Mr. Zellman confronted them and demanded they sit at the kitchen table to discuss what was found. When appellant became "lippy" and disrespectful to his father, the latter became angry, grabbing appellant by his sweatshirt and lifting him out of his chair. Appellant responded by pushing his father and, according to Mr. Zellman's post-incident statement, grabbing him by the neck and dragging him around the room. After they released one another, Mr. Zellman slapped his daughter, who was screaming at him to release appellant. A.Z., who was very upset, ran outside and appellant followed. Appellant called the police who arrived shortly thereafter; Mr. Zellman also contacted police.

{¶3} Officer Don DiSanto, of the Bainbridge Township Police Department, arrived at the scene. Mr. Zellman advised the officer he found marijuana paraphernalia and he and appellant got into an altercation. He subsequently gave the officer consent to search the boy's bedroom. Officer DiSanto found several pieces of tinfoil which, from his training and experience, had burnt marijuana residue on them. The officer then observed and photographed multiple red marks on Mr. Zellman's neck, shoulder, and armpit area. The officer also observed and photographed visible red marks on appellant's neck, shoulder area, and back. Mr. Zellman told the officer appellant initiated the altercation and, during the incident, appellant choked him. Alternatively, appellant stated his father grabbed him first and eventually choked him. After

2

conducting interviews, the officer concluded, given the totality of the circumstances, that appellant was the primary aggressor.

{¶4} On January 13, 2016, a complaint was filed charging appellant with domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree, if committed by an adult; disorderly conduct, in violation of R.C. 2917.11(A)(1), a minor misdemeanor, if committed by an adult; and illegal possession of marijuana drug paraphernalia, in violation of R.C. 2925.141(C), a minor misdemeanor, if committed by an adult. Appellant's parents, through counsel, filed a joint motion to dismiss the charges; the juvenile court denied the motion and the matter proceeded to an adjudicatory hearing before the magistrate.

{¶5} At the hearing, Mr. Zellman testified as a court's witness, pursuant to Evid.R. 614(A). He testified that, on the day of the incident, he confronted appellant about the drug paraphernalia. When he perceived appellant was not taking the problem seriously, he asserted he lost his temper and grabbed the boy by the sweat shirt. He stated appellant pushed him, but could not recall any other aspect of the scuffle. Mr. Zellman testified he initiated the altercation; he was the aggressor; and appellant was merely reacting to his aggressive posture. Moreover, Mr. Zellman stated that, although the photographs taken at the scene reveal observable injuries, he maintained he suffers from lupus, which causes his skin to be significantly sensitive. He admitted his version of events did not correspond to his statement he gave the police, particularly his statement that appellant initiated the fracas and dragged him around the room by his neck. He indicated, however, his preliminary statements were made under stress of

3

anger and frustration and were a result of the officers' exhortations that he file charges against his son.

{¶6}    Barb Banko, Mr. Zellman's fiancée, testified that she did not observe the altercation begin, but noted she witnessed appellant and Mr. Zellman pushing and yelling at each other.  She also heard appellant exclaim: "You think you're tougher than me?"

{¶7}    Appellant testified in his own defense.  He admitted he and his sister were "lippy" with their father.  He testified that his father grabbed him.  He stated this frightened him because Mr. Zellman had never touched him before.  Due to his fear, appellant attempted to push his father away with his elbow, but this escalated the confrontation.  He testified he was eventually able to get out of his father's grip by slipping out of his shirt.

{¶8}    After the hearing, the magistrate found appellant delinquent on each count.  Appellant filed objections, asserting, inter alia, that the magistrate erred in rendering the decision because he advanced sufficient, credible evidence to establish the affirmative defense of self-defense.  The trial court considered the evidence and determined Mr. Zellman's testimony at trial, that appellant was essentially defending against his aggressive actions, was not credible.  The court indicated Mr. Zellman's statement to police that appellant choked him, thereby escalating the altercation, was more credible.  As a result, the court determined appellant failed to establish the affirmative defense of self-defense and, by implication, concluded the state proved appellant committed the offense of domestic violence beyond a reasonable doubt.  The court additionally adopted the magistrate's decision relating to the remaining offenses.

4

{¶9} Appellant now appeals, assigning the following as error:

{¶10} "The trial court erred in finding that B.Z. had not acted in self defense by a preponderance of the evidence presented at the adjudicatory hearing."

{¶11} "To establish a claim of self-defense, an accused must demonstrate the following: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Mogul,* 11th Dist. Trumbull Nos. 97-T-0018 and 97-T-0067, 1998 WL 258164, *3 (May 15, 1998), citing *State v. Melchior,* 56 Ohio St.2d 15, 20-21 (1978). The degree of force permitted depends upon what is reasonably necessary to protect the individual from the use of unlawful force. *State v. Johnson*, 11th Dist. Lake No. 20015-L-103, 2006-Ohio-2380, ¶20. In other words, one may use a commensurate amount of force as the circumstances require to protect oneself against an attack.

{¶12} In situations involving the use of non-deadly force, it is not necessary for a person to retreat to avoid the danger, even if such retreat is possible. *Mogul*, *supra*, citing *State v. Perez*, 72 Ohio App.3d 468, 472 (10th Dist.1991). Because there is no duty to retreat in a case involving non-deadly force, the accused must simply satisfy the two remaining elements of the defense, i.e., that the accused was not at fault in creating the situation, and he or she had a genuine belief that he was in imminent danger of bodily harm. A defendant has the burden of establishing self-defense by a preponderance of the evidence. *Johnson*, *supra,* at ¶22.

{¶13} Both Mr. Zellman and appellant testified at the hearing that Mr. Zellman initiated the altercation that precipitated the charges; the post-incident statement Mr.

5

Zellman provided Officer DiSanto, however, indicated appellant initiated the physical confrontation. Moreover, there was conflicting testimony regarding what occurred after Mr. Zellman grabbed appellant by the sweatshirt. Officer DiSanto testified Mr. Zellman reported appellant, after he was grabbed, pushed him and then proceeded to choke him. Through the testimony of Officer DiSanto, the state introduced photographs of Mr. Zellman's injuries. The photos depicted red marks on his neck and arm pit area.

{¶14} At trial, Mr. Zellman recanted his initial account and stated that appellant merely resisted by pushing him away with his forearm or elbow. Mr. Zellman also testified he has lupus and, as a result, has extremely sensitive skin that bruises and bleeds easily. He maintained the red marks in the photos were a result of his skin's exaggerated reaction to contact from his condition. Moreover, he testified that his prior inconsistent statement to Officer DiSanto was a result of his anger and the police strongly encouraging him to press charges against appellant.

{¶15} Appellant testified his father initiated the altercation when he grabbed his sweatshirt. Appellant maintained he merely pushed his father in an attempt to free himself.

{¶16} In light of the above, the trial court determined appellant failed to establish self-defense. The court's conclusion was premised upon its position that the testimony of both Mr. Zellman and appellant was not credible. Instead, the court elected to believe the evidence provided by Officer DiSanto, who took Mr. Zellman's original, inconsistent statements. When Mr. Zellman was impeached by his prior inconsistent statement, he asserted his original statement was a "heat-of-the-moment"

overstatement.  And, given the police presence at his home, he "felt like [he] was being pressured into making a statement that the police department wanted to hear."

{¶17}  In his brief, appellant places significant weight on the statement of his sister, A.Z., which was given to Officer DiSanto at the scene.  A.Z., however, did not testify.  And, although Officer DiSanto testified A.Z. identified Mr. Zellman as the aggressor, the officer stated, in view of the inconsistencies between appellant's and A.Z.'s statements, he did not find her rendition of events credible.

{¶18}  The trier of fact is in the best position to determine credibility issues, because he or she personally observes the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204 (1996).  Here, the trial court heard the conflicting evidence and also heard Mr. Zellman's explanation as to why his testimony differed so significantly from his post-incident statement.  The court did not find the explanation credible and, as a result, elected to believe the version of events Mr. Zellman gave to Officer DiSanto.  "If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment."  *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 WL 286594, *3 (Mar. 17, 2000).  Under the circumstances, we must defer to the trial court's construction of the evidence. We therefore hold the trial court did not err in adjudicating appellant delinquent on the domestic-violence and disorderly-conduct charges.  In doing so, the trial court chose to believe that appellant initiated the physical confrontation and ultimately choked his father in the course of the altercation.  These points would negate appellant's defense of self-defense.  Thus, we further conclude the

trial court did not err in concluding that appellant failed to meet his burden of persuasion on his claim of self-defense.

{¶19} Appellant's sole assignment of error lacks merit.

{¶20} The judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.

THOMAS R. WRIGHT, J., concurs,

TIMOTHY P. CANNON, J., concurs with a Concurring Opinion.

_____

TIMOTHY P. CANNON, J., concurring.

{¶21} I concur with the majority's judgment and opinion as it pertains to the sole argument raised on appeal, to wit: whether appellant established the affirmative defense of self-defense by a preponderance of the evidence. I write separately regarding an issue I find fundamentally disconcerting in this case, albeit not an issue before us for decision.

{¶22} Appellant was charged with an act of domestic violence against his father, who gave a post-incident statement that appellant was the initial aggressor. Appellant's father later recanted his post-incident statement as inaccurate, borne out of anger toward appellant for the drug paraphernalia found in appellant's bedroom and the pressure he felt was exerted by the police. Appellant's parents filed a joint motion to dismiss the charges, which stated appellant's father did not believe he was a victim of domestic violence; all parties were in the process of rebuilding their familial

8

relationships; and it would not be in appellant's best interest to move forward with court involvement. The trial court denied this motion.

{¶23} As a result, the only evidence of domestic violence the state presented at trial was the prior recanted statement of appellant's father. The version of events appellant's father presented at trial was very favorable to appellant's affirmative defense of self-defense. This was apparently corroborated by the post-incident statement given by appellant's sister, who was also present during the altercation but was not called as a witness.

{¶24} The prosecutor's decision to proceed, at least with regard to the charge of domestic violence, suggests overreaching and is contrary to the overriding purposes for which juvenile offenders are to be brought to justice: "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A).