[Cite as *State v. C.J.*, 2018-Ohio-1258.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2017-06-082 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>4/2/2018 |
| - vs - | : | |
| | : | |
| C.J., | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 16-N000689

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Christo Lassiter, 839 Dunore Road, Cincinnati, Ohio 45220-1416, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, C.J., appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child.

{¶ 2} On June 20, 2016, 14-year-old appellant, 15-year-old B.N. (the "victim"), and two other male juveniles played a basketball game at the Mason Community Center. After completion of the game, appellant and the victim played a one-on-one game, while the other

two boys watched. Appellant and the victim were experienced basketball players and knew each other from other games at the community center. As the game progressed, it became very physical, with each boy taunting and aggressively fouling the other. At one point during the game, the victim hit his knee on the floor and it began to bleed. Some of the other boys who were watching the game from a bench on the sidelines began laughing at the victim. In response, the victim threw the ball at one of his friends and pushed another boy off the bench. The video system at the community center recorded the victim doing so.

{¶ 3} By all accounts, the game was very competitive and the fouls became increasingly physical. The game ended with a confrontation between appellant and the victim. As the victim went for a lay-up, appellant knocked him to the ground. Appellant then "got into" the victim's face and taunted him. Fed up, the victim got up and as he went to get his bag and leave the court, pushed appellant out of the way. Appellant testified that the victim was angry and that in addition to shoving him, the victim also kicked appellant as hard as he could in the shin. The victim denied kicking appellant and stated that any kick was accidental. In response to the victim's actions, appellant punched him in the face, causing injury. Appellant immediately apologized to the victim.

{¶ 4} Mason police were called and Police Officer Jonathan Stafford responded. The officer spoke to the victim and various witnesses and viewed the community center video. Although the video did not show the actual altercation between appellant and the victim, it showed the victim throwing the ball at one of his friends and pushing another boy off the bench as they watched the game. Officer Stafford found appellant and his mother sitting on a bench, outside of the community center office. Appellant's mother gave permission for the officer to speak with appellant. Appellant told the officer what happened and provided a written statement to the officer. No *Miranda* warnings were given. After appellant provided his statement, he was not arrested and he and his mother left the

community center.

{¶ 5} On June 24, 2016, Officer Stafford filed a complaint alleging appellant was a delinquent child for having committed an act that would constitute assault in violation of R.C. 2903.13(A), if committed by an adult. Five days later, appellant's trial counsel sent a letter to the prosecutor requesting discovery and asking that all evidence be preserved, including the community center video. Trial counsel also delivered the request for preservation of the video to the Mason Police Department. Officer Stafford was a new police officer and was unaware that any video from the community center was fed to the police department. The record does not reflect whether the prosecutor communicated with Officer Stafford about the defense request for the preservation of the video. In any event, Officer Stafford failed to request that the video be preserved. Consistent with its practice, the community center recorded over the video.

{¶ 6} Appellant moved to dismiss the case on the ground the state violated his due process rights by failing to preserve the community center video. Appellant argued that the video was necessary to establish that he acted in self-defense when he punched the victim. Appellant further moved to suppress his statements to Officer Stafford on the ground he was never advised of his *Miranda* rights. On December 5, 2016, a juvenile court magistrate held a hearing on appellant's motions to dismiss and suppress, and then proceeded to an adjudicatory hearing on the assault charge. Prior to the hearing on the motion to dismiss, the parties entered into the following Agreed Upon Stipulation of Fact regarding the video:

> Mason Police Videotape taken at the Mason Community Center in Mason on 6-21-16 [sic], at approximately 1326 hours, and referenced in [Mason] Police Incident Report * * * shows [B.N.] (alleged victim) shoving a kid on the bench, as well as throwing a basketball at another kid. This occurred approximately 1-2 minutes prior to the incident.

{¶ 7} The magistrate denied appellant's motion to suppress, finding that appellant

was not in custody when he talked to Officer Stafford, and therefore, *Miranda* warnings were not required. The magistrate further denied appellant's motion to dismiss. The magistrate found that the video was not materially exculpatory, and therefore, appellant was required to show the state acted in bad faith in failing to preserve the video. The magistrate found that the state did not act in bad faith. The magistrate further found that appellant was able to obtain comparable evidence to the video, given the parties' stipulation as to what was shown on the video, Officer Stafford's testimony, and the fact appellant was "able to call witnesses who were actually present." Appellant filed objections to the magistrate's denial of his motions to dismiss and suppress, which were overruled by the juvenile court.

{¶ 8} On January 19, 2017, the magistrate adjudicated appellant delinquent for committing the lesser included offense of disorderly conduct in violation of R.C. 2917.11(A)(1). The magistrate found that appellant failed to prove he acted in self-defense when he punched the victim. The magistrate further found that the victim's kick, "even if intentional[,] was minor." Appellant filed objections to the magistrate's order, which were overruled by the juvenile court.[1]

{¶ 9} Appellant now appeals, raising three assignments of error.

---

1. Once again, the juvenile court magistrate improperly captioned his rulings as a "magistrate's order" as opposed to a "magistrate's decision." Juv.R. 40(D)(2(a)(i) restricts "magistrate's orders" to "[r]egulating the proceedings" and specifically provides that a "magistrate's order" may not be "dispositive of a claim or defense of a party." We have held that a magistrate's ruling on a motion to suppress is a "decision" and not an "order." *State v. J.A.C.*, 12th Dist. Warren Nos. CA2017-04-044 and CA2017-04-045, 2018-Ohio-361, ¶ 10, fn. 2. A fortiori, and because the grant of a motion to dismiss a case is dispositive as it ends the state's case, a magistrate's ruling on a motion to dismiss is likewise a "decision" and not an "order" under Juv.R. 40. Further, the Ninth Appellate District has held that a magistrate's adjudication of delinquency is a "decision" and not an "order." *In re T.S.*, 9th Dist. Medina No. 11CA0033-M, 2012-Ohio-858, ¶ 5. The designation is significant because the time to set aside a "magistrate's order" is 10 days whereas the time to object to a "magistrate's decision" is 14 days. Juv. R. 40(D)(2)(b) and Juv.R.40(D)(3)(b)(i). The designation of a magistrate's determination of an issue as a "magistrate's order" or "magistrate's decision" is therefore not merely a matter of form, but rather one of substance. While the magistrate's rulings were filed in January 2017, appellant's trial counsel did not file objections to all three rulings until April 2017. We note that no one claimed that the objections were untimely filed and the juvenile court proceeded to address the objections on the merits and overrule them. We further note that while the juvenile court did not correct the incorrect captions in the magistrate's rulings denying appellant's motions to dismiss and suppress, the court did recognize that the magistrate's adjudication of delinquency "should have been characterized as a Magistrate's Decision and not an Order, and the Court will reference to it as same."

- 4 -

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE COURT FATALLY ERRED IN FAILING TO DISMISS THE CHARGE AFTER THE STATE FAILED TO PRODUCE MATERIALLY EXCULPATORY VIDEO EVIDENCE TIMELY REQUESTED BY DEFENSE COUNSEL.

{¶ 12} Appellant argues that his due process rights were violated when the state failed to preserve the community center video, and thus, the juvenile court erred in denying his motion to dismiss. Appellant asserts that the video was materially exculpatory because it would have shown how angry the victim was when he threw the ball at one of his friends and pushed another off the bench minutes before his altercation with appellant. Appellant claims the video would have rebutted the victim's assertion that his kick was merely accidental, and was thus necessary to establish that appellant acted in self-defense when he punched the victim.

{¶ 13} When reviewing a trial court's decision regarding a motion to dismiss, this court applies a de novo standard of review. *State v. Shalash*, 12th Dist. Warren No. CA2014-12-146, 2015-Ohio-3836, ¶ 21. We thus give no deference to the trial court's decision. *State v. Hubbard,* 12th Dist. Preble No. CA2004-12-018, 2005-Ohio-6425, ¶ 6.

{¶ 14} Depending on the nature of the evidence, different tests are applied to determine whether the state's failure to preserve evidence amounts to the level of a due process violation. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 73; *State v. Gatliff*, 12th Dist. Clermont No. CA2012-06-045, 2013-Ohio-2862, ¶ 40. The state's failure to preserve "materially exculpatory" evidence, regardless of whether such failure was done in good faith or bad faith, violates due process. *Gatliff* at ¶ 40. Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

- 5 -

{¶ 15} A different rule is used when the evidence is merely "potentially useful." *Id.* at ¶ 41. Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *Id.* Bad faith implies more than bad judgment or negligence; rather, it imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. *Id.*

{¶ 16} A defendant generally bears the burden of showing that the evidence was materially exculpatory. *Gatliff*, 2013-Ohio-2862 at ¶ 40. However, "where a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state in accordance with its normal procedures," the burden shifts back to the state to prove that the evidence was not exculpatory. *State v. Benton*, 136 Ohio App.3d 801, 805 (6th Dist.2000). *See also Columbus v. Forest*, 36 Ohio App.3d 169 (10th Dist.1987); *State v. Palivoda*, 11th Dist. Ashtabula No. 2006-A-0019, 2006-Ohio-6494; and *State v. McDade*, 12th Dist. Warren Nos. CA2003-09-096 and CA2003-09-097, 2004-Ohio-3672. "However, if the state fails to carry this burden, the defendant must still show that the evidence could not have been obtained by other reasonable means." *Benton* at 805-806. Because the video was recorded over after appellant has filed his motion to preserve the video, the burden was on the state to show that the video was not exculpatory.

{¶ 17} We find that appellant's due process rights were not violated when the state failed to preserve the community center video because the video was not exculpatory. The video did not depict the altercation between appellant and the victim. Rather, it showed the victim throw the ball at one of his friends and push another boy off the bench a few minutes before the altercation. The exculpatory value of the video was also not apparent before the evidence was destroyed. Appellant argued that he punched the victim in self-defense in part because the victim's behavior toward the spectators led him to believe the victim would

- 6 -

continue his behavior and further assault him after he kicked him. The juvenile court rejected the argument, finding that the victim's behavior towards his friends was only slightly probative as it was unclear whether the victim's actions resulted from ill intent or frustration. While the video may have shed some light on the victim's emotional state a few minutes prior to the altercation and removed the ambiguity referred to by the juvenile court, the video was only tangential to the altercation and was therefore not exculpatory.

{¶ 18} We further find that appellant could have obtained and in fact was able to obtain comparable evidence by other reasonably available means. The parties entered into an agreed stipulation of facts which described what the video showed, to wit, the victim's behavior minutes before the altercation. Officer Stafford testified at the hearing on the motion to dismiss. Having viewed the video before it was recorded over, the officer testified that the video showed that the victim was frustrated with the way he was playing and the fact he was losing the game. The officer further stated he did not know whether the victim was angry. The officer also testified at trial. However, trial counsel never questioned him as to the contents of the video or the victim's behavior prior to the altercation.

{¶ 19} At trial, the victim testified he acted out against his friends out of frustration because they were laughing at him. One of those friends was G.W. who testified at trial and was thus available to answer questions about the victim's demeanor. The record further shows that there were three other eye witnesses present during the game that trial counsel could have called to testify. However, they did not testify at trial.

{¶ 20} Because the community center video was not exculpatory and appellant was able to obtain comparable evidence by other reasonable means, we find that appellant's due process rights were not violated when the state failed to preserve the video after receiving appellant's request that it be preserved. *See Benton*, 136 Ohio App.3d 801. The juvenile court, therefore, did not err in denying appellant's motion to dismiss.

{¶ 21} Appellant's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT FATALLY ERRED IN FAILING TO SUPPRESS THE STATEMENT OF [C.J.] AND THE ENTIRE POLICE REPORT AND TESTIMONY OF OFFICER STAFFORD DUE TO THE ABSENCE OF *MIRANDA* WARNINGS.

{¶ 24} Appellant argues the juvenile court erred in denying his motion to suppress statements he made to Officer Stafford at the community center. Specifically, appellant argues that his statements, as well as the police report and the officer's testimony, should have been suppressed because appellant was never advised of his *Miranda* rights. Appellant asserts that because he was not free to go, "that is arrest/custody enough for *Miranda* purposes."

{¶ 25} An appellate court's review of a motion to suppress presents a mixed question of law and fact. *In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, ¶ 10; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *In re J.S.* at ¶ 10; *Burnside* at ¶ 8. Accordingly, when reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. *In re J.B.*, 12th Dist. Butler No. CA2004-09-226, 2005-Ohio-7029, ¶ 52. However, an appellate court reviews de novo whether the trial court has applied the appropriate legal standard. *Id.*

{¶ 26} Police officers are not required to administer *Miranda* warnings to every person whom they question. *In re J.S.* at ¶ 11; *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). Only *custodial* interrogation triggers the need for *Miranda* warnings. *Biros* at 440. *Miranda* defines custodial interrogation as any "questioning initiated by law enforcement

- 8 -

officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966).

{¶ 27} Where a suspect has not been formally arrested, "the restraint on the subject's freedom of movement must be significant in order to constitute custody." *In re J.B.*, 2005-Ohio-7029 at ¶ 53. Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. *Id.* at ¶ 54. In cases involving a juvenile, the juvenile suspect's age may be analyzed as part of the court's determination on whether a custodial interrogation occurred. *In re J.S.*, 2012-Ohio-3534 at ¶ 12, citing *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394 (2011).

{¶ 28} We have further held that general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not fall within the ambit of custodial interrogation. *State v. Rivera-Carrillo*, 12th Dist. Butler No. CA2001-03-054, 2002 Ohio App. LEXIS 1038, *9-10 (Mar. 11, 2012). That is because such general questioning is only an attempt to elicit basic facts relative to the officer's investigation. *Id.* Having an individual stay while relevant facts are ascertained does not necessarily elevate the situation to custodial interrogation. *See id.*

{¶ 29} After a careful review of the record, we find that appellant was not in custody for *Miranda* purposes at the time he spoke with Officer Stafford and provided a written statement. At the time of his statements, appellant was seated on a bench, in public, outside the office of the community center. His mother was present and had told the officer that no one had spoken to appellant about the incident yet. Appellant was not under arrest and was not "otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The officer did not tell appellant that he had to stay or that he was not free

to go. While the officer testified that appellant would not have been "free to go" during the questioning, that was simply because the officer wanted to get appellant's side of the story. At the time the officer spoke to appellant, the officer had not completed his investigation and was unsure whether charges would be filed as the victim's mother had indicated earlier she did not want to press charges. Officer Stafford's questions to appellant were simply on-the-scene inquiries done as part of the normal fact-finding process. Once appellant provided a written statement, he and his mother left the community center.

{¶ 30} Based upon the foregoing, we find that appellant was not in custody at the time he spoke with Officer Stafford and provided a written statement. The juvenile court, therefore, properly denied appellant's motion to suppress.

{¶ 31} Appellant's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THIS CASE SHOULD BE DISMISSED AS IT CANNOT WITHSTAND AN INDEPENDENT REVIEW FOR PROOF BEYOND A REASONABLE DOUBT.

{¶ 34} Appellant argues the juvenile court erred in adjudicating him delinquent for committing disorderly conduct because he not only did not act recklessly, he also acted in self-defense when he punched the victim.

{¶ 35} In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence and not against the manifest weight of the evidence, the standard of review is the same as the standard used in adult criminal cases. *In re Washington*, 81 Ohio St.3d 337, 339 (1998); *In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 27. The relevant inquiry in reviewing a claim of insufficient evidence is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70. When evaluating the

sufficiency of the evidence, this court must construe the evidence in favor of the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132; *State v. V.A.C.*, 12th Dist. Warren No. CA2017-01-011, 2017-Ohio-5779, ¶ 9. If a juvenile court's delinquency finding is supported by the manifest weight of the evidence, then the finding is also supported by sufficient evidence. *In re D.L.B.*, 12th Dist. Fayette No. CA2011-09-019, 2012-Ohio-3045, ¶ 3.

{¶ 36} In considering whether a conviction is against the manifest weight of the evidence, "a reviewing court must examine the entire record, weigh all of the evidence and reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *In re M.J.C.* at ¶ 28; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Granting a new trial through use of discretionary power should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 35.

{¶ 37} Appellant was adjudicated delinquent for committing disorderly conduct in violation of R.C. 2917.11(A)(1). Pursuant to that statute, "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

{¶ 38} Appellant argues the juvenile court erred in adjudicating him delinquent because he did not act recklessly in punching the victim. Appellant asserts he did not intend to harm the victim; rather, he punched the victim out of reflex or instinct after the victim shoved and kicked him.

{¶ 39} "A person acts recklessly when, with heedless indifference to the

consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶ 40} We find that appellant acted with heedless indifference to the consequences and disregarded a substantial and unjustifiable risk that his conduct was likely to cause physical harm to the victim when he punched the victim in the head with a close fist with such force that it caused a "very big knot" on the victim's head and a swollen, black and blue eye. Appellant testified he punched the victim out of reflex or instinct. However, he also testified he punched the victim to defend himself because he did not know if the victim was going to keep coming at him. The punch was therefore not accidental but intentional, done to stop what he thought the victim was going to do. Appellant's conduct was reckless.

{¶ 41} Appellant further argues the juvenile court erred in adjudicating him delinquent because the evidence shows he acted in self-defense.

{¶ 42} To establish a claim of self-defense in situations involving the use of non-deadly force, a defendant must prove by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the altercation, and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Russell*, 12th Dist. Warren Nos. CA2011-06-058 and CA2011-09-097, 2012-Ohio-1127, ¶ 33, 38; *In re B.Z.*, 11th Dist. Geauga No. 2016-G-0089, 2017-Ohio-5638, ¶ 11-12. When acting in self-defense, a person is privileged to use only that force that is reasonably necessary to repel the attack. *Russell* at ¶ 32, citing *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). "If the

- 12 -

defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis sic.) *Williford* at 249.

{¶ 43} As stated above, by all accounts, the one-on-one game between appellant and the victim was very competitive with hard, physical fouls on both sides. Immediately before the altercation, a hard foul by appellant knocked the victim to the ground. The victim testified that soon after, appellant got in his face, taunting him. Fed up, the victim got up and as he went to get his bag and leave the court, pushed appellant out of the way as the latter was in his personal space. The victim testified he did not shove appellant very hard. Appellant stumbled back but did not fall down. Appellant then punched him in the face. The punch was forceful and painful.

{¶ 44} At trial, the victim denied he kicked appellant during the altercation. The victim's written statement does not mention a kick. By contrast, appellant told Officer Stafford at the scene and testified at trial that the victim kicked him in the shin. Appellant testified that the victim whipped back his leg as hard as he could and then kicked appellant. Appellant expressed his belief the kick was intentional.

{¶ 45} Three of the victim's friends testified. One was G.W. who watched the one-on-one game and witnessed the altercation. The other two friends testified about a text the victim sent the day after the incident. While one of those friends testified that the victim texted he had pushed and kicked appellant, the other friend testified that the text indicated a shove but no kick. G.W. testified that while he saw the victim shove appellant, he did not see him kick appellant. However, G.W.'s written statement to the police stated that the victim kicked appellant.

{¶ 46} Officer Stafford testified that G.W. told him at the scene that appellant's kick was accidental. Likewise, the victim indicated at the scene that the kick was accidental. The officer testified that based upon statements appellant, the victim, and eye witnesses

made at the scene, he ultimately concluded that the kick was not intentional. The officer further explained that the conflicting statements as to whether the kick was accidental or intentional was the reason why the victim was not charged.

{¶ 47} Appellant testified that after the victim hit his knee on the floor during the game and some spectators began laughing at him, the victim became angry and frustrated and consequently, "ran over to [one of the boys] sort of screaming at him and * * * just pushed him and then * * * threw the ball at [another boy] out of rage." Appellant testified that after he subsequently scored despite a hard foul by the victim, appellant stated "and one" but denied otherwise taunting the victim. Angry, the victim dropped the ball, walked over to appellant, shoved him, and then kicked him as hard as he could. Surprised by the victim's reaction and not knowing what was going to happen next, appellant punched the victim. Appellant testified he did so out of instinct and to protect himself. Appellant explained he did not know if the victim was going to come at him again or not. Alternatively, appellant stated his belief that the victim was going to keep coming at him. Appellant could not explain why he chose to punch the victim rather than simply shove him. Appellant stated he was neither angry nor scared when he punched the victim.

{¶ 48} The record shows that there was conflicting testimony as to the identity of the boys on the bench who were the recipients of the victim's frustration during the game, who was winning the one-on-one game, and whether the victim disrespectfully called out appellant earlier in the game. Appellant's trial counsel further challenged the veracity and credibility of the victim and G.W. on several occasions during trial.

{¶ 49} In light of the foregoing, the juvenile court found that appellant failed to prove he acted in self-defense:

> [Appellant] did not prove he is not at fault for the fight, nor did
> he prove he had reasonable grounds to believe and an honest

- 14 -

belief that he was in imminent danger of harm. Both boys * * * engaged in hard fouls. [Appellant] caused [the victim] to fall to the ground. [Appellant] also got in [the victim's] face. After [the victim] pushed and kicked [appellant], there was insufficient evidence in [the victim's] acts and words to cause [appellant] to reasonably and honestly believe [the victim] would cause him harm. There was no testimony [the victim] was advancing on [appellant]. [The victim's] shove did not knock [appellant] to the ground, just away. [The victim's] kick even if intentional was minor.

{¶ 50} The juvenile court further found that "[w]hen looking from [appellant's] position" and "under the circumstances and conditions that surrounded him at the time, including the conduct of the boys, [appellant] did not have reasonable grounds to believe and an honest belief that he was about to receive bodily harm."

{¶ 51} The trier of fact is in the best position to determine credibility issues, because he or she personally observes the demeanor, voice inflections, and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204 (1996). Here, the juvenile court heard conflicting evidence as to whether the victim kicked appellant before he was punched and if so, as to whether the kick was intentional or accidental. The court further heard appellant's explanations as to why he believed he was in imminent danger of bodily harm and thus punched the victim as the only means to protect himself. The court did not find the explanation credible, elected to believe the victim's version of the events, and found that appellant failed to prove self-defense.

{¶ 52} "If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment." *In re B.Z.*, 2017-Ohio-5638 at ¶ 18 (deferring to the juvenile court's construction of the evidence and determining the court did not err in finding the juvenile failed to prove self-defense and in adjudicating him delinquent for committing disorderly conduct). The credibility of the testimony of appellant and the witnesses was a matter for the juvenile court to decide. The

court was free to believe all, part, or none of appellant's testimony, as well as the other witnesses. *See State v. Lewis*, 12th Dist. Fayette No. CA2010-08-017, 2011-Ohio-415. Appellant's delinquency adjudication for disorderly conduct was not improper or against the manifest weight of the evidence, merely because the trier of fact believed the testimony of the state's witnesses. *See State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454.

{¶ 53} We therefore find that the juvenile court did not err in concluding that appellant failed to prove self-defense and in adjudicating appellant delinquent for committing disorderly conduct.

{¶ 54} Appellant's third assignment of error is overruled.

{¶ 55} Judgment affirmed.

RINGLAND, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 56} YouTube, Hollywood movies, and sometimes professional basketball games (when there is lapse in judgment or loss of control) demonstrate flagrant, hard fouls. However, such are not demonstrations of skill, nor do they depict basketball at its best. Giving punishment to a fellow player does not make one tough, skilled, or on the way to being "accomplished."[2]  When occurring in basketball games, they are often called as intentional fouls. Endurance, persistency, and discipline are exercised by the successful

---

2.  "Prison Rules" in basketball call for the use of "hard fouls" but have no place other than with inmates on the yard fighting to survive. There is nothing there to emulate. *See Shock the World,* p.142-143, by author Peter F. Burns.

player because such attributes allow one to maintain focus and restraint.[3]

{¶ 57} No doubt, the record here documents that the rivalry and competitiveness were intense between C.J. and B.N. By way of their conduct, both had consented to giving and receiving hard fouls. Attempting to persevere, B.N. was struggling in front of his friends. The record shows that his frustration and embarrassment led B.N. to lose control and erupt on more than one occasion. As the game was concluding, the violence escalated and B.N. lost all restraint, attacking C.J. by shoving him and kicking C.J. in the knee. All players are sensitive to knee injury, as such an injury can be debilitating and life-changing. Shoving might be an acceptable hard foul for some playing asphalt basketball, but an attack to the knee is beyond the pale of a hard foul; it is an assault. To end the assault and in fear of further escalation, C.J. defended himself by punching B.N. in the forehead.

{¶ 58} B.N's attempt to seriously injure C.J. precipitated and caused C.J. to respond in like kind. While the trial court had difficulty attributing intent to B.N. in his kick to C.J.'s knee, C.J. had no time to act or reflect. C.J. articulated he felt that he had to reciprocate to stop anything further from happening. C.J. did not cause the exchange and he proved self-defense by a preponderance of the evidence. Therefore, C.J. was not guilty of the charge, and I respectfully dissent on the majority's disposition of appellant's third assignment of error. Otherwise, I concur on the decisions reached in appellant's first and second assignments of error.

---

3. As a power forward, Blake Griffin gets "tossed around" a lot. He's been told his entire career he needs to punch someone. Blake admits to being pushed to the edge and even tempted, but maintains he exercises restraint because the bigger picture is to be there for the team and focus on a win. *See Los Angeles Times* interview with Melissa Rohlin, May 5, 2015.