[Cite as *Vice v. Sexton*, 2011-Ohio-1647.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| Ryan S. Vice, | : | |
| | : | |
| Plaintiff-Appellee,[1] | : | |
| | : | Case No. 10CA3371 |
| v. | : | |
| | : | DECISION AND |
| Bridget Sexton, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | File-stamped date:  3-30-11 |

_____

APPEARANCES:

Roxanne Hoover, Portsmouth, Ohio, for Appellant.

_____

Kline, J.:

**{¶1}** Bridget Sexton (hereinafter "Sexton") appeals the judgment of the Scioto County Court of Common Pleas, Domestic Relations Division, which granted Ryan S. Vice's (hereinafter "Vice") request to change Sarah Michelle Sexton's name to Sarah Michelle Vice.  On appeal, Sexton claims that the trial court inappropriately used an appellate standard of review when it confirmed the magistrate's decision.  Because we find that the trial court did not apply an appellate standard of review, we disagree. Sexton also claims that granting Vice's name-change request was an abuse of

---

[1]  Plaintiff-Appellee, Ryan S. Vice, did not file a brief or otherwise enter an appearance in this appeal.  Under App. R. 18(C), we may accept Sexton's statement of the facts and issues as correct and reverse the trial court's judgment as long as her brief reasonably appears to sustain reversal.  See *Sprouse v. Miller*, Lawrence App. No. 06CA37, 2007-Ohio-4397, at fn.1; *State v. Miller* (1996), 110 Ohio App.3d 159, 161-62.  "An appellate court may reverse a judgment based solely on a consideration of an appellant's brief." *Sprouse* at fn.1; see, also, *Ford Motor Credit Co. v. Potts* (1986), 28 Ohio App.3d 93, 96; *State v. Grimes* (1984), 17 Ohio App.3d 71, 71-72.  However, because the arguments in Sexton's brief do not warrant reversal, we affirm the judgment of the trial court.

discretion. Because we find that the trial court did not abuse its discretion, we disagree. Accordingly, we affirm the decision of the trial court.

I.

**{¶2}** Sarah Michelle Sexton was born in March 2007, and she is the minor child of Sexton and Vice. In May 2009, Vice filed a complaint to establish parentage, parenting time, child support, a tax exemption, and a name change. The complaint requested, among other things, that Sara Michelle's surname be changed to "Vice."

**{¶3}** Sexton and Vice settled all the issues in the case, except for the name-change request. On April 12, 2010, a hearing was held before a magistrate to determine whether Sara Michelle's name should be changed.

**{¶4}** From Sarah Michelle's birth through the filing of the complaint in this case, Vice had essentially no contact with Sarah Michelle. During that time, Vice struggled with drug addiction. In February 2009, Sexton contacted Vice and offered to drop a child support order if Vice would agree to give up his parental rights. Shortly thereafter, in May 2009, Vice filed the complaint in this case.

**{¶5}** Several weeks before the April 2010 hearing, Vice began regular visitation with Sarah Michelle under a court ordered "break in" visitation schedule. And the court set Vice's visitation to phase into "full Rule 6.0 parenting" in June 2010, which meant that Vice would be spending more time with Sarah Michelle. Vice had been paying child support for Sarah Michelle, but due to a recent layoff, he was approximately $699 in arrears. Although Vice had only recently become involved in Sarah Michelle's life, he expressed a desire to maintain a relationship with her for "the rest of her life." He also

sought a name change because he feared that Sarah Michelle would suffer future embarrassment at school if she had a name different from his.

{¶6}     Vice also has a son, Brendon Vice, who is approximately a month younger than Sarah Michelle, and Vice testified that Brendon and Sarah Michelle play well together.  Finally, Vice testified that he is engaged to be married and that his fiancé is planning on changing her last name to Vice.

{¶7}     Sexton opposed Vice's name change request because, until recently, Vice had minimal contact with Sarah Michelle.  Despite Vice's professed desire for a relationship with Sarah Michelle "for the rest of her life," Vice had not yet "proven that at all" to Sexton based on his prior lack of involvement in Sarah Michelle's life.

{¶8}     Sexton is also engaged to Jesse Mays, and Sexton claimed that Mays would probably change his last name to "Sexton" when they got married.  Mays testified, however, that he would change his last name "if I have to," and the magistrate noted that Mays was "less than thrilled" with the prospect of changing his name.

{¶9}     Neither Sexton nor Vice wanted to change Sarah Michelle's surname to a hyphenated name, such as Sexton-Vice or Vice-Sexton.

{¶10}     The magistrate issued a decision finding that "it is in the best interests of the minor child to grant [Vice]'s request for a change of name and the minor child's name should be changed to Sarah Michelle Vice effective immediately."  Mag. Dec. at 6.

{¶11}     The trial court adopted and approved the magistrate's decision.  Sexton then filed a timely objection, and the trial court overruled the objection and confirmed the magistrate's decision.  The trial court ordered that Sarah Michelle's name should be changed to Sarah Michelle Vice "effective immediately."  This appeal followed.

{¶12}	Sexton asserts the following assignment of error: "THE TRIAL COURT APPLIED THE WRONG STANDARD OF REVIEW ON OBJECTIONS TO A MAGISTRATE'S DECISION."

{¶13}	Additionally, Sexton asserts that the "[m]agistrate's decision in this matter was * * * unreasonable, unconscionable, and arbitrary."  We note that Sexton failed to list this as an assignment of error for review as required by App.R. 16(A)(3).  "An appellate court may disregard any errors not separately assigned and argued."  *State v. Cox* (Mar. 17, 2000), Hocking App. No. 99CA06 citing *Austin v. Squire* (1997), 118 Ohio App.3d 35, 37.  See, also, App.R. 12(A)(2).  Nevertheless, we can discern Sexton's "second assignment of error" from her argument, and therefore, we will consider her "second assignment of error" in the interest of justice.  See *Roberts v. City of Wellston*, Jackson App. No. 03CA14, 2004-Ohio-606, at ¶7, fn.1 (Kline, J., with one judge concurring in judgment only); *State v. Knox* (July 24, 1997), Vinton App. No. 97CA509.

II.

{¶14}	In her first assignment of error, Sexton contends that "[t]he trial court applied the wrong standard of review on objections to a magistrate's decision."  Appellant's Brief at 4.

{¶15}	Civ.R. 53(D)(4)(d) governs a trial court's ruling on objections to a magistrate's decision.  "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Id.

{¶16}	The trial court's review of a magistrate's decision "contemplates a *de novo* review of any issue of fact or law that a magistrate has determined when an appropriate

objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's *de novo* review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function." *Knauer v. Keener* (2001), 143 Ohio App.3d 789, 793-94.

**{¶17}** A trial court errs when it uses an appellate standard of review to review a magistrate's decision. *Francis v. McDermott*, Darke App. No. 1744, 2008-Ohio-6723, at ¶14. The trial court's use of an appellate standard of review prevents an appellate court from conducting the appropriate review of the trial court's decision. Id. An appellate court must reverse and remand when a trial court rules on a magistrate's decision using an appellate standard of review. Id.

**{¶18}** Because an appellate court generally presumes regularity in the proceedings below, we presume that the trial court conducted an independent analysis in reviewing the magistrate's decision. *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, at ¶47. And because of that presumption, the party asserting error bears the burden of affirmatively demonstrating that the trial court failed to perform an independent analysis. *Arnold v. Arnold*, Athens App. No. 04CA36, 2005-Ohio-5272, at ¶31; *Mahlerwein* at ¶47. "An affirmative duty requires more than a mere inference[;] it requires [an] appellant to provide the reviewing court with facts to rebut our general presumption." *In re Taylor G.*, Lucas App. No. L-05-1197, 2006-Ohio-1992, at ¶21. Simply because a trial court adopted a magistrate's decision does not mean that the court failed to exercise independent judgment. *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Adams* (July 23, 1999), Scioto App. No. 98CA2617.

**{¶19}** Here, the judgment entry that confirmed the magistrate's decision (1) tracked the language of Civ. R. 53(D)(4)(d) and (2) stated: "The Court has reviewed the pleadings, transcript, and Objection and finds the Objection is not well taken. The Court finds that the Magistrate has properly determined the factual issues and appropriately applied the law. The Magistrate's decision is CONFIRMED."

**{¶20}** Sexton asserts that, although the trial court did not use the phrase "abuse of discretion," the court's language "implies that the Court found that the magistrate's decision was not 'unreasonable, unconscionable or arbitrary.'" Appellant's Brief at 10.

**{¶21}** Sexton has not affirmatively demonstrated that the trial court failed to exercise independent judgment. Sexton does not satisfy her burden on appeal by merely claiming that the trial court's language implies the use of an abuse-of-discretion standard. Additionally, tracking the language of Civ.R. 53(D)(4)(d) does not imply the use of an abuse-of-discretion standard.

**{¶22}** In conclusion, we presume that the trial court conducted an independent analysis when it reviewed the magistrate's decision, and Sexton has failed to rebut that presumption. Therefore, we find that the trial court did not apply an appellate standard of review when it confirmed the magistrate's decision. Accordingly, we overrule Sexton's first assignment of error.

III.

**{¶23}** As stated above, although she did not specifically list it as an assignment of error, Sexton argues in her "second assignment of error" that the magistrate's decision was "unreasonable, unconscionable and arbitrary." Appellant's Brief at pg. 10.

**{¶24}** Initially, we note that Sexton's "second assignment of error" asks us to do something that we do not do. An appellate court reviews the trial court's decision, not the magistrate's decision. See *Woody v. Woody*, Athens App. No. 09CA34, 2010-Ohio-6049, at ¶17, fn.1; *In re Woodburn*, Summit App. No. 20715, 2002-Ohio-35. Therefore, we infer that Sexton argues the trial court abused its discretion by confirming the magistrate's decision. Accordingly, we will review the trial court's decision to grant Vice's name-change request.

**{¶25}** We use an abuse-of-discretion standard to review a trial court's name-change decision. *Jones v. Smith*, Lawrence App. No. 10CA4, 2010-Ohio-4461, at ¶5. We will not substitute our judgment for that of the trial court, and we will reverse only if the trial court abused its discretion. Id. "An abuse of discretion is more than an error of judgment; it is an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary." Id.; *In re Change of Name of Simers*, Washington App. No. 06CA30, 2007-Ohio-3232, at ¶8.

**{¶26}** A request to change a child's name "should be granted only upon finding [by the trial court] that it is 'in the best interest of the child.'" *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 334. When determining the best interests of the child in a name-change case, "the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or

inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." *In re Willhite*, 85 Ohio St.3d 28, 1999-Ohio-201, at paragraph two of the syllabus. See, also, *Bobo* at 335.

{¶27}     Additionally, in *Bobo*, the Court warned against favoring the father's interests based on tradition. "We caution the courts, however, to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname. While it may be a custom to name a child after the father, giving greater weight to the father's interest fails to consider that, where the parents have never been married, the mother has at least an equal interest in having the child bear the maternal surname. In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years." *Bobo* at 334.

{¶28}     Sexton argues that the trial court's decision was based on the "societal norm," which gives preference to the father's interests. The record, however, demonstrates that the trial court based the decision on the best-interests-of-the-child test.

{¶29}     The trial court's decision relied on the best-interest-of-the-child test from *In re Willhite*. Mag. Dec. at 2-3. The court found that because Sarah Michelle was only three years old at the time of the hearing, she "is obviously too young to offer an opinion or preference as to her name." Id. at 3. Additionally, the trial court determined that changing Sarah Michelle's name now "is the best time to do so to avoid future confusion and embarrassment." Id. at 4. The court found that hyphenating Sarah Michelle's

name was "clearly NOT in [her] best interests" because "the name Sexton-Vice, or Vice-Sexton, would both lend to embarrassment and ridicule quite easily." Id. at 5. The court also noted that Sexton "could very easily decide to get married and take her husband's name which would leave the child with a name different from her residential parent." Id. The trial court ruled that "[c]hanging [Sarah Michelle]'s name to that of her Father would serve to further strengthen the bonds that are being established between Father and child currently." Id. Finally, the court noted that a name change would allow Sarah Michelle to "share a familial connection with her half-brother." Id. at 5-6.

**{¶30}** We cannot substitute our judgment for that of the court below. "Whether or not we would have arrived at a different conclusion if we were undertaking a de novo review is not the issue." *Jones*, 2010-Ohio-4461, at ¶17. The trial court applied the proper test, and we find nothing unreasonable, unconscionable, or arbitrary about the trial court's decision. Accordingly, the trial court did not abuse its discretion when it granted Vice's name-change request, and we overrule Sexton's "second assignment of error."

**{¶31}** Having overruled Sexton's assignments of error, we affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J. and McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY:_____
     Roger L. Kline, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**