[Cite as *In re B.M.*, 2018-Ohio-1733.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: B.M.  : APPEAL NO. C-170103
TRIAL NO. 16-4971X

:

:   *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  May 4, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin,* Assistant Prosecuting Attorney, for Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Sarah N. Weber* and *Julie Kahrs Nessler*, Assistant Public Defenders, for Appellant.

**MILLER, Judge.**

{¶1}   Following a bench trial before a magistrate, 14-year-old B.M. was adjudicated delinquent for committing an act that had she been an adult would have constituted felonious assault.  B.M. now claims that the juvenile court's delinquency finding was against the manifest weight of the evidence.  For the following reasons, we reverse B.M.'s adjudication.

## Facts

{¶2}   B.M. lived with her mother, S.W., stepfather, L.W., and her sister.  One day, B.M. and her sister neglected to lock the front door when they went to the library.  L.W. returned home from work and found the house unlocked.  When B.M. returned home, L.W. confronted her about the door and attempted to poke her.  B.M. swung at L.W.  L.W. was not permitted by S.W. to physically discipline B.M.  L.W. told B.M. to go upstairs to her room to wait until her mother was home.  B.M. complied.

{¶3}   When S.W. returned home, B.M. was called downstairs to discuss the matter.  L.W. became angry and started yelling in B.M.'s face.  B.M.'s hands were at her sides.  She stepped back, her hands still down. L.W. grabbed B.M. and wrapped his arms around her body, with one arm around her neck.  B.M. had trouble talking and breathing.  B.M. said L.W. was attempting to pull her down.  B.M. then stabbed L.W. twice with a steak knife that she had in her pocket.  She wounded L.W. near his elbow and in the upper thigh.

{¶4}   B.M. claimed that she acted in self-defense, only stabbing L.W. to free herself from his chokehold.  The magistrate disagreed, finding that B.M. failed to establish each element of the affirmative defense of self-defense with nondeadly

force. Over B.M.'s objections, the juvenile court adopted the magistrate's decision. B.M. now appeals.

## Analysis

{¶5} In her first assignment of error, B.M. claims that the juvenile court erred as a matter of law in adjudicating her delinquent of felonious assault because the evidence demonstrated that she acted in self-defense.

{¶6} As an initial matter, there are two affirmative defenses for self-defense. The juvenile court incorrectly applied the standard for self-defense using nondeadly force. Both B.M. and the state argue this is error, and agree that the correct affirmative defense under these facts is self-defense using deadly force.

{¶7} Under R.C. 2901.01(A)(2), "deadly force" means any force that carries a substantial risk that it will proximately result in the death of any person. The application of the deadly-force standard for self-defense is appropriate when a defendant has been charged with felonious assault for harming someone with a knife. *See In re Bumpus*, 1st Dist. Hamilton No. C-020776, 2003-Ohio-4307 (deadly-force standard used where juvenile used knife to stab victim in the torso and shoulder); *State v. Hansen*, 4th Dist. Athens No. 01CA15, 2002-Ohio-6135 (deadly-force jury instruction given where defendant slashed victim with a lock-blade knife); *State v. Sims*, 8th Dist. Cuyahoga No. 85608, 2005-Ohio-5846 (deadly-force jury instruction appropriate where defendant used kitchen knife to stab victim in the face as he lunged at her). Here, B.M. stabbed her stepfather with a steak knife in his arm and in the upper thigh. We find that self-defense using deadly force is the applicable affirmative defense.

{¶8} In order to establish the affirmative defense of self-defense using deadly force, B.M. had to prove by a preponderance of the evidence that (1) she was

not at fault in creating the situation giving rise to the assault; (2) she had a bona fide belief that she was in imminent danger of death or great bodily harm and her only means of escape from such danger was in the use of force; and (3) she had not violated any duty to retreat or avoid the danger. *In re Bumpus* at ¶ 8.

{¶9} To determine whether B.M. established the elements of self-defense using deadly force we consider the manifest weight of the evidence. *See, e.g., In re J.P.*, 8th Dist. Cuyahoga No. 81486, 2003-Ohio-3522. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶10} We first inquire whether B.M. was at fault for creating the situation. B.M. was called downstairs by both her mother and L.W. to discuss the incident that had happened earlier that day between B.M. and L.W. B.M. did not initiate a confrontation. L.W. became irate as he spoke. S.W. testified that immediately prior to the stabbing, B.M. stepped back, with her hands at her sides. L.W. preemptively restrained B.M. because he believed she intended to swing at him. B.M.'s moving away from L.W. is what caused him to grab B.M. There is no evidence of any additional provocative action by B.M. Thus, there is no indication that B.M. actually instigated any physical contact; by all accounts, L.W. made the first move. L.W.'s subjective belief that B.M. would swing at him is not supported by the record, and his misperception is not attributable to B.M. L.W.'s belief that B.M. might hit him cannot be used to ascribe fault to B.M.

{¶11} The court took issue with B.M. putting the knife in her pocket before going downstairs for the discussion. But B.M.'s possession of the concealed weapon did not create the situation. Prior to grabbing her, L.W. did not know B.M. had the knife. He only realized that she possessed a weapon when he "felt something happen to his arm and leg" after he grabbed her. The presence of the knife had no influence on L.W.'s decision to place his arms around B.M. and did not create the situation that gave rise to the assault. Accordingly, the first element of self-defense was met.

{¶12} Second, B.M. had to prove that she had a bona fide belief that she was in imminent danger of great bodily harm or death and her only means of escape from such danger was stabbing L.W. The trier of fact "must consider the entire situation and determine whether the person's actions were reasonable under the circumstances." *In re Bumpus*, 1st Dist. Hamilton No. C-020776, 2003-Ohio-4307, at ¶ 11, quoting *State v. Napier*, 105 Ohio App.3d 713, 664 N.E.2d 1330 (1st Dist.1995); *see State v. Oates*, 2013-Ohio-2609, 993 N.E.2d 846, ¶ 11 (3d Dist.) (defendant's bona fide belief means a belief that was both objectively reasonable and subjectively honest). Here, L.W., an adult male who was already angry with B.M. because of the earlier incident, confronted B.M. and physically restrained her by wrapping his arms around her body. B.M. had trouble talking and breathing because L.W.'s arm was around her neck. B.M. described L.W.'s movement as attempting to pull her down to the ground, at which point she would have been in an even more vulnerable position. S.W. was concerned for B.M.'s safety. The magistrate found that B.M. was reasonable to respond with some force. Further, there was no evidence of serious injury from the two stab wounds to L.W.'s arm and upper thigh, and B.M. immediately dropped the knife once L.W. let her go. It is unclear what less force 14-year-old B.M. could have successfully applied against a grown man in this

circumstance. In conformance with the juvenile court's finding that the use of some force was reasonable, we hold that it was objectively reasonable for B.M. to have had a genuine and honest belief that she was in danger of serious bodily harm and she used appropriate force to escape.

{¶13} Finally, B.M. did not have a legal duty to retreat. Under R.C. 2901.09(B), "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense." B.M. was in her home when she stabbed L.W. to protect herself. Pursuant to the findings set forth in the magistrate's decision and adopted by the juvenile court, we hold that B.M. proved the affirmative defense of self-defense. Accordingly, we sustain B.M.'s first assignment of error.

In her second assignment of error, B.M. argues that the juvenile court erred in not considering aggravated assault when there was evidence of provocation. This assignment of error is made moot by our disposition of the first assignment of error and we do not address it.

## Conclusion

{¶14} In conclusion, because B.M. proved that she acted in self-defense and self-defense is a complete defense to felonious assault, we reverse the judgment of the juvenile court and discharge B.M.

*Judgment reversed and appellant discharged.*

**MYERS, P.J.,** and **DETERS, J.,** concur.

Please note:
 The court has recorded its own entry on the date of the release of this opinion.