[Cite as *In re A.S.*, 2019-Ohio-2359.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  A.S.  :  APPEAL NO. C-180056
TRIAL NO. 17-2344X

:

:  *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 14, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Appellant A.S.

**WINKLER, Judge.**

{¶1}     Appellant A.S. appeals the judgment of the juvenile court adjudicating him delinquent in connection with the robbery of a pizza-delivery driver.  For the reasons that follow, we affirm.

### *Background Facts and Procedure*

{¶2}     A pizza-delivery driver was lured to a home in Price Hill where several young men attacked and robbed her.  The victim could not identify any of the suspects.  In the course of the police investigation, the police traced the phone number used to order the pizza to a juvenile, M.B.  The police interviewed M.B., and during that interview, M.B. identified a juvenile named "Black Tino," and another juvenile, S.F., as also being involved in the incident.  The police showed M.B. a photograph of A.S., and M.B. confirmed A.S. was "Black Tino."  Police arrested A.S. in connection with the robbery.  The matter proceeded to a trial before the magistrate.

{¶3}     At trial, the victim testified that she had driven her car to a house in Price Hill to deliver a pizza.  She pulled up to the house and five black males were standing outside.  One of the males stated that his mom would be out.  When no one came out of the house, the victim called the customer's number, but the call went straight to voicemail.  One of the males stated that his mom went to the store and would be right back.  At this point, the victim told the group that she had other deliveries and would return.  She put the pizza in the passenger side of her car and locked the doors.  She then walked around the back of her car when she heard one of males yell, "Get her."  One of the juveniles jumped over the hood of her car and then body slammed her to the ground and started punching her.  Another juvenile tried to

open the passenger-side car door. The juvenile who had body slammed her and another juvenile tried to grab items out of her pocket. The victim's wallet fell out, and one of the three grabbed it. The juveniles took off running, and the victim tried to pursue them, but could not catch them.

{¶4} M.B. testified that he had been among the group that had ordered pizza, and that a "fistfight" had occurred with the delivery driver. M.B. testified that A.S. also had been a part of that group, and M.B. identified A.S. in court. M.B. initially stated that he had "not really" seen what A.S. had done during the course of the robbery because M.B. "wasn't paying attention." When questioned by the magistrate, M.B. said that he had seen A.S. punch the victim. On cross-examination, M.B. admitted that when investigators had first approached him about the robbery, he lied about an incident that had occurred a week after the robbery, in which M.B. had sustained a gunshot wound. M.B. told police that he had been shot in the course of a drive-by shooting by an unknown person, but M.B. later admitted to police that he had been holding a gun when it accidentally discharged. The state did not file a complaint against M.B. for false reporting or for the robbery.

{¶5} In addition to M.B.'s testimony, the state presented testimony from two police officers in the criminalistics unit who perform fingerprint analysis. The police had obtained fingerprints from the pizza driver's vehicle. An officer testified that she used the prints that she had received from the driver's vehicle and put them into a database. The database matched the prints to "A.S."

{¶6} The magistrate recommended that A.S. be adjudged delinquent. A.S. filed objections. A.S. objected to the magistrate's admission of the fingerprint evidence, arguing that the evidence had not been properly authenticated. A.S.

argued that the state had failed to prove that the prints belonged to A.S., and not another person with the same name. A.S. also argued that the state had failed to prove beyond a reasonable doubt that A.S. had been one of the perpetrators.

{¶7} The juvenile court sustained A.S.'s objection as to the fingerprint evidence. The trial court determined that with respect to A.S.'s adjudication, the magistrate had not "fully consider[ed]" M.B.'s testimony, and "instead relied heavily on the fingerprint evidence." The juvenile court excluded the fingerprint evidence in conducting an independent review, and found that M.B. had identified A.S. as "Black Tino" to police, and that M.B. had seen A.S. punch the victim. The juvenile court determined M.B.'s testimony to be "consistent and credible." The juvenile court adjudged M.B. delinquent of robbery and imposed a suspended commitment to the Department of Youth Services.

{¶8} A.S. has appealed.

### Manifest Weight of the Evidence

{¶9} In his first assignment of error, A.S. contends that his adjudication was against the manifest weight of the evidence.

{¶10} In reviewing whether a juvenile court's adjudication of delinquency is against the manifest weight of the evidence, this court applies the same standard of review applied to criminal defendants. *See In re B.M.*, 1st Dist. Hamilton No. C-170103, 2018-Ohio-1733, ¶ 9. In reviewing a manifest-weight challenge, the court of appeals sits as a "thirteenth juror" and "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶11} A.S. argues that the juvenile court erred in relying on M.B.'s testimony, because it was inconsistent and not credible. As to M.B.'s lack of credibility, A.S. argues that M.B. admittedly lied to police about the source of a gunshot wound, and the state did not press charges against M.B. in connection with the false report or the pizza-delivery robbery. As to the substance of M.B.'s testimony, A.S. argues that M.B. first stated that three people had been involved in the robbery, including himself, but later stated that four people had been involved, and none of M.B.'s testimony matched the victim's account that five people had been involved. M.B. also denied that he had been holding anything in his hands during the robbery, but the victim testified that the two boys who had been observing the event had been holding florescent lights. A.S. also points out that M.B. described the entire event as a "fistfight" between the boys and the delivery driver, which could not be considered credible. A.S. also argues that M.B. stated several different times that he had not been paying attention and did not remember what had occurred. A.S. also argues that M.B.'s initial identification of A.S. was "suspect" because M.B. did not identify A.S. by name, but by the nickname "Black Tino," at which point the police provided M.B. with a single photograph—that of A.S. Finally, A.S. argues that the juvenile court lost its way in adjudicating him delinquent because the state provided alternate theories by which A.S. had been involved in the crime: (1) that A.S. had punched the victim, (2) that A.S. had tried to get into the victim's vehicle, and (3) that A.S. had tried to steal items from the victim's vehicle after the victim pursued the suspects.

{¶12} A juvenile court is free to believe some, all, or none of a witness's testimony. *In re L.S.*, 6th Dist. Ottawa No. OT-17-021, 2018-Ohio-4758, ¶ 28. Moreover, "[i]f evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment." *In re B.Z.*, 11th Dist. Geauga No. 2016-G-0089, 2017-Ohio-5638, ¶ 18, quoting *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 WL 286594, *3 (Mar. 17, 2000). Therefore, the juvenile court was free to resolve the inconsistencies in M.B.'s testimony, consider M.B.'s credibility issues as brought out on cross-examination, and still find credible M.B.'s statements to police and at trial implicating A.S. in the robbery. During trial, the magistrate asked M.B. what he had seen A.S. do during the event. M.B. replied, "Just punch her."

{¶13} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that A.S.'s adjudication must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Thus, A.S.'s adjudication was not against the manifest weight of the evidence. We overrule the first assignment of error.

### *Review of Magistrate's Credibility Determination*

{¶14} In his second assignment of error, A.S. argues that the juvenile court violated Juv.R. 40 by failing to give deference to the magistrate's credibility determinations. Juv.R. 40(D)(4) provides in relevant part:

(b) Action on Magistrate's Decision. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a

previously-referred matter, take additional evidence, or return a matter to a magistrate.

(c) If No Objections Are Filed. If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision.

(d) Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶15} A.S. argues that neither party objected to the magistrate's finding that M.B. was not credible, and therefore, under Juv.R. 40, the juvenile court was not permitted to disagree with the magistrate's credibility determination. A.S.'s argument that the juvenile court should have deferred to the magistrate's credibility determination assumes that the magistrate found M.B.'s testimony not credible, which is not supported by the magistrate's decision. The magistrate found that M.B.'s testimony was not consistent and "at times" not credible, but the magistrate specifically found M.B.'s testimony credible with respect to the other juvenile being tried with A.S. for the robbery. The magistrate determined that "even without M.B.'s

testimony," A.S. should be found delinquent because of the state's fingerprint evidence. The magistrate's partial disregard of M.B.'s testimony as to A.S. in this case does not equate to a finding by the magistrate that M.B.'s testimony as to A.S. was not credible, but a recognition that A.S.'s fingerprints on the vehicle of the victim was in and of itself sufficient evidence of A.S.'s involvement in the crime.

{¶16} Furthermore, A.S. specifically objected to the magistrate's decision on the basis that "the greater weight of the credible evidence does not support [his] adjudication." Therefore, the weight of the evidence and the credibility of the witnesses, which would include M.B.'s credibility, was squarely before the juvenile court for an independent review.

{¶17} A.S. further argues that even if the juvenile court could review the magistrate's credibility determination under Juv.R. 40, it should have given deference to the magistrate's determination. A.S. cites to *In re X.B.*, 10th Dist. Franklin Nos. 16AP-243 and 16AP-277, 2016-Ohio-5805. In *In re X.B.*, father filed an action in domestic-relations court seeking to establish parentage and custody of his alleged child, and seeking custody of another child. Maternal grandmother had been given emergency custody of the children. The magistrate held a four-day trial where it was undisputed that father had met mother through a Craigslist ad for a massage, and that the first time they met, they engaged in sexual relations. At the time, mother was just 16 years old, and father was in his early 40s. Although father claimed that he did not know mother was a minor when they met, he admitted that he found out at some point that mother was underage, but he continued to have sex with her. Mother, as well as other witnesses, testified that father had a pattern of

8

engaging in sex acts with minors and paying them with either money or drugs, and that father prostituted girls.

{¶18} The magistrate in *In re X.B.* determined that grandmother's witnesses were credible, and recommended an award of custody to grandmother. On objections, the juvenile court granted father's objections and awarded custody to father. The trial court found that the testimony of grandmother's witnesses was not credible, and that insufficient evidence existed to find that father was an unsuitable parent. Grandmother appealed. The Tenth District reversed the trial court, holding that the trial court abused its discretion. The Tenth District determined that "[a]lthough a trial court must still independently assess the evidence and reach its own conclusions when reviewing a magistrate's recommendation, we believe the trial court's credibility assessment here was in error." *Id.* at ¶ 20. The appellate court determined that the magistrate "as the true trier of fact, was in the better position to judge the credibility of the witnesses[,]" and therefore the appellate court "believe[d] the magistrate's credibility determinations were more reliable and persuasive." *Id.* at ¶ 13.

{¶19} The appellate court in *In re X.B.* engaged in a detailed review of the witnesses' testimony in holding that the trial court abused its discretion in granting custody to father. Although the appellate court determined that the magistrate's credibility determinations were more persuasive based upon the evidence at trial, the appellate court's holding does not stand for the proposition that a trial court must defer to a magistrate's credibility determination in ruling on objections.

{¶20} While a trial court may defer to a magistrate's credibility determination, the trial court, not the magistrate, is "the ultimate trier of fact." *State*

*ex rel. Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 37; *Hurricane Dev., L.L.C. v. Fourtounis*, 2017-Ohio-927, 86 N.E.3d 857, ¶ 27 (8th Dist.). "A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties." *Ashworth* at ¶ 38. Thus, even if a trial court is limited to reviewing the trial in the form of a transcript, the trial court "must make its own factual determination by undertaking an independent analysis of the issues." *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990); *see Vice v. Sexton*, 4th Dist. Scioto No. 10CA3371, 2011-Ohio-1647, ¶ 16 (A trial court when ruling on objections must conduct a de novo review of the factual and legal issues and "may not properly defer to the magistrate in the exercise of the trial court's de novo review."). In this case, the juvenile court had a duty to undertake an independent review of the evidence presented at trial when ruling on A.S.'s objections with regard to his delinquency adjudication. The record indicates that the juvenile court undertook an independent review of the evidence as required by Juv.R. 40.

{¶21} Finally, to the extent that A.S. argues that the juvenile court should have found M.B.'s testimony not credible, this argument is indistinguishable from A.S.'s first assignment of error and is without merit.

{¶22} Therefore, the juvenile court did not violate Juv.R. 40 in ruling on A.S.'s objections. We overrule A.S.'s second assignment of error.

### Conclusion

{¶23} In conclusion, we determine that A.S.'s assignments of error appealing from his juvenile-delinquency adjudication are without merit. We affirm the judgment of the juvenile court.

Judgment affirmed.

**MOCK, P.J.,** concurs.
**BERGERON, J.,** dissents.

**BERGERON, J.,** dissenting.

{¶24} Integral to our system of appellate review is deference to the ultimate finder of fact on factual questions. Needless to say, that deference is not complete, and there are recognized exceptions and caveats. But that deference carries particular resonance when the finder of fact evaluates the credibility of a witness. After all, subsequent courts do not have that judge's vantage point to hear the inflexions of voice, observe the demeanor, and render a candid assessment of whether a witness told the truth.

{¶25} I respectfully dissent because the magistrate discounted the credibility of the key witness and purposefully did not rely on his inculpatory testimony regarding A.S. The witness's testimony was riddled with inconsistencies, and he admitted to lying to the police, so needless to say, he had some credibility problems. Nevertheless, on review, the juvenile court—without taking any new evidence— deemed that witness's testimony "consistent and credible."

{¶26} Let's take a quick look at the witness's (M.B.'s) testimony. Remember, M.B.'s phone was the one used to summon the pizza-delivery driver, so he sat in the cross-hairs of the investigation and had every incentive to deflect blame onto others. M.B. also proved to be a reluctant witness, going to great lengths to avoid saying anything of consequence in his testimony:

Q.    Okay. Who all was with you at the time?

A.    (Inaudible.)

11

Q.     I'm sorry?

A.     The people that I told you.

Q.     Okay.  But you have to tell us here now.

A.     Oh.

Q.     How many people were there when you guys made the phone call?

A.     I didn't really count them.

* * *

Q.     Do you remember who the other boys were that were there [for the phone call]?

A.     No.

After further prodding, M.B. acknowledges that A.S. had some involvement in the altercation:

[The Court].  Do you see any of the people who were involved in the fistfight in court today?

A.     Yeah.

Q.     Okay. One of the kids in the fistfight, was that [A.S.]?

A.     Huh?

Q.     [A.S.], was he one of the boys in the fight?

A.     Yes.

Q.     Did you say "yes"?  Okay.  Do you see him -- can you point to him here?

A.     I don't want to point.

But then M.B. repeatedly states that he did not witness A.S. do anything because he professed not to be paying attention:

Q.     That's [A.S.].  What did he do?

A.     **I don't know really, I wasn't paying attention really-really**.

Q.     So you said there was a fight.  Did you see what he was doing in the fight?  No?  But he was in the fight.  Okay.

\* \* \*

Q.     Okay.  At one point did [A.S.] throw a punch?

[Objection to leading question, which was sustained].

Q.     **Did you ever see [A.S.] do anything?**

A.     **Not really**.

\* \* \*

[The Court].   [M.B.], you said that [A.S.], the one wearing the blue, was involved in the fight.

A.     Yes.

[The Court].   **But you didn't see what he did.**

A.     **Unh-unh**.

[The Court].   Well, how do you know if he was involved in the fight, then, if you didn't see what he did?

A.     **I don't remember that he really did that, that's what I said**.

[The Court].   You what?

A.     **I said I don't remember what he did**.

(Emphases added.)  After going through this litany and hearing him disavow seeing anything, the magistrate further presses M.B.: "But you saw him do something," and M.B. acknowledges that he did.  The magistrate's follow-up then elicits the lone inculpatory statement from M.B.

[The Court].   Well, what'd you see him do?

A.      Just punch her.

[The Court].   He punched her.

A.      Yeah.

{¶27}   The magistrate was unimpressed by M.B.'s testimony.  Indeed, if the magistrate had found him credible, the easiest thing in the world would have been to say "he testified that the defendant punched the victim and I believe him."  That, however, is not what the magistrate said, as she went out of her way to emphasize M.B.'s lack of credibility.   At the end of the trial, the magistrate remarked, "While [M.B.]'s testimony certainly is questionable and the credibility of his testimony at some parts was questionable [as to the other juvenile, it was corroborated by other evidence]."   As to A.S. specifically, she notes, "I didn't really consider [M.B.]'s statement too much * * *."

{¶28}  The magistrate's written decision echoes the point, as the magistrate repeatedly noted M.B.'s lack of credibility.  The magistrate, consistent with her trial remarks, found M.B. credible with respect to his testimony about a codefendant because that testimony lined up with independent evidence. "**Although [M.B]'s testimony was not consistent and at time could be found to be not credible**, his testimony regarding [other juvenile] was credible[,]" and "**[w]hile [M.B.]'s testimony was at times not credible**, he testified to exactly what

[other juvenile] admitted to * * *." (Emphasis added.) Juxtaposing these points, the magistrate found a portion of the testimony (regarding the codefendant) credible but not the testimony regarding A.S.

{¶29} Because the magistrate deemed M.B. not credible, she declined to rely on his testimony in finding A.S. guilty, and instead relied exclusively on the fingerprint evidence. ("Even without [M.B.'s] testimony, the state proved its case. [A.S.]'s fingerprints were found on the victim's car."). But A.S. successfully challenged the admissibility of the fingerprint evidence before the juvenile court, and the state does not question that determination on appeal. With the fingerprint evidence out of the equation, that leaves only the discredited testimony of M.B. to prop up the conviction. The juvenile court thus correctly framed the issue that it was tasked with determining "whether sufficient evidence other than the fingerprint evidence supports a finding **beyond a reasonable doubt** that A.S. committed the delinquent act of robbery." (Emphasis added.) But I would find that the juvenile court erred by deeming M.B.'s testimony "consistent and credible" and finding that it weighed in favor of a delinquent adjudication.

{¶30} Before reviewing that determination, I would start with the parameters that govern the juvenile court's review of the magistrate's decision. First, as with any case, credibility determinations are primarily the province of the trier of fact. *See Desantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990) ("The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness."); *In re Adoption of J.L.*, 1st Dist. Hamilton Nos. C-180453 and C-180454, 2019-Ohio-366, ¶ 25 ("[I]n weighing

the evidence, we must always be mindful that the magistrate and the probate court were in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony."). Consequently, if "a magistrate comments on credibility and the trial court does not take additional evidence * * * 'the judgment of the magistrate on issues of credibility is, absent other evidence, the last word on the issue for all practical purposes.' " *Mandelbaum v. Mandelbaum,* 2d Dist. Montgomery No. 21817, 2007-Ohio-6138, ¶ 103, quoting *Quick v. Kwiatkowski,* 2d Dist. Montgomery No. 18620, 2001 WL 871406, *4 (Aug. 3, 2001) (discussing decisions of magistrates in the context of Civ.R. 53(D)).[1] In other words, in situations such as the present one, the magistrate functions as the trier of fact:

> [T]he trial court did not view these witnesses in person, but only reviewed the transcript of the proceedings. The magistrate, as the true trier of fact, was in the better position to judge the credibility of the witnesses. The actual trier of fact present during the testimony is generally in the better position to judge the credibility of witnesses.

*In re X.B.,* 10th Dist. Franklin Nos. 16AP-243 and 16AP-277, 2016-Ohio-5805, ¶ 13.

{¶31} While the juvenile court must undertake an independent review of the record, it is generally limited in second-guessing credibility determinations unless it entertains new evidence. And I don't mean to suggest that a juvenile court could *never* question a magistrate's credibility determination absent new evidence—for instance, if a magistrate deemed a witness not credible but the testimony comported with documentary evidence in the record, a juvenile court might well make a different call taking into consideration the totality of the evidence.

---

[1] "Courts have noted that Civ.R. 53 and Juv.R. 40(D) are analogous." (Citation omitted.) *In re T.S.,* 9th Dist. Medina No. 11CA0033-M, 2012-Ohio-858, ¶ 8.

{¶32} But this was a rather simple case, and once we remove the fingerprint evidence from consideration, the entire conviction hangs on the weight assigned to a solitary statement of one witness. The juvenile court sought to support its revised credibility determination by pointing out that, "[i]n his recorded statement to police, M.B. reported that an individual he referred to as 'Black Tino' was the boy that punched the victim." While this could be a potential basis to shore up M.B.'s credibility, the recorded statement is not in the record before us. Therefore, there was no way for the juvenile court to compare the recorded statement to M.B.'s trial testimony, at least so far as the record reveals. That leaves the juvenile court's conclusion that M.B.'s testimony was "consistent and credible." As the excerpts above attest, M.B.'s testimony was anything but consistent (nor does the majority suggest otherwise). He repeatedly explained that he either did not see or could not recall any involvement by A.S., and only at the end, after careful prodding by the magistrate, did he perform a 180 and magically recall that he saw A.S. punch the victim. It is little wonder that the magistrate declined to find that last statement credible.

{¶33} The majority opinion cites *In re B.Z.*, 11th Dist. Geauga No. 2016-G-0089, 2017-Ohio-5638, for the proposition that " '[i]f evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment.' " *Id.* at ¶ 18, quoting *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 WL 286594, *3 (Mar. 17, 2000). The *Warren* case, which *B.Z.* quotes, goes on to explain that this deference is appropriate because of the trial court's position to observe the demeanor of witnesses. *Warren* at *3. But that really makes my point—the juvenile court never had the opportunity to

observe the demeanor of the critical witness, and it lacked any basis for simply jettisoning the magistrate's credibility finding. And for all of the reasons discussed above, I would find that the juvenile court's credibility determination contravenes the record and that, as the majority summarized *X.B.*, "the magistrate's credibility determinations were more persuasive based upon the evidence at trial." *See In re X.B.*, 10th Dist. Franklin Nos. 16AP-243 and 16AP-277, 2016-Ohio-5805, at ¶ 19.

{¶34} This conviction simply cannot stand on the basis of a statement that A.S. punched the victim when the witness lacked credibility, and that statement contradicted what M.B. had recounted (several times) just moments earlier. For those reasons, I would find that the juvenile court's determination to the contrary was against the manifest weight of the evidence and I would accordingly reverse the judgment below and remand the cause for a new trial.

{¶35} I respectfully dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.